SC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

Jack Allen Wilson, ) No. CV 1-06-01393-JMR
)
    Plaintiff, ) **ORDER**
)
vs. )
)
Edward Alamieda, Jr., et al., )
)
    Defendants. )
)

    This case was reassigned to the undersigned judge on November 26, 2008. (Doc.# 8.)[1] Plaintiff Jack Allen Wilson, a former California state inmate, now residing in Marysville, Indiana, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and was granted leave to proceed *in forma pauperis*. (Doc.# 1, 4.) Plaintiff subsequently filed a First Amended Complaint.[2] (Doc.# 7.) Defendants Alamieda, Woodford, Rawers, Cuttillo, Adams, Lais, Depner, and Nguyen are ordered to respond to Plaintiff's claims in his First Amended Complaint regarding exposure to environmental and secondhand smoke and deliberate indifference to his serious medical needs based on the failure to provide

---

[1] "Doc.#" refers to the docket number of filings in this case. This is one of nearly 200 cases accepted by district judges in the District of Arizona to help the Eastern District of California.

[2] The First Amended Complaint supersedes the original in its entirety. Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).

JDDL

medications when he was paroled. The remaining claims and Defendants are dismissed without prejudice.

**I.  Statutory Screening of Complaints**

The Court is required to screen complaints seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

**II.  First Amended Complaint**

Plaintiff asserts violation of his First and Eighth Amendment rights and state law. He sues: Directors of California Department of Corrections and Rehabilitation (CDC), Edward Alamieda, Jr., and Jeanne Woodford; Scott Rawers, warden of Avenal State Prison (ASP); Judy Cuttillo, a captain at ASP; K.J. Depner, a sergeant at ASP; Derral Adams, warden of Corcoran Substance Abuse Treatment Facility (CSATF); Drs. Kyle and Nguyen, physicians at CSATF; Jack Lais, a Facility Captain at CSATF; and Does 1-10, correctional and medical staff at ASP or CSATF. Plaintiff seeks compensatory and punitive damages.

Plaintiff alleges that he is (and was) diabetic and wheelchair dependent. He alleges that he is now suffering from lung, head, and neck cancer, loss of teeth, and disability due to his exposure to "Environmental Tobacco Smoke" (ETS) or "Secondhand Tobacco Smoke" (STS) at ASP and CSATF. Plaintiff alleges the following facts:

On December 2, 2002, Plaintiff was transferred from Corcoran State Prison to ASP, where he was daily exposed to ETS/STS in the housing units. (Id. at 11.) Plaintiff complained and filed a grievance regarding that exposure to ETS/STS. Unidentified corrections officers disclosed Plaintiff's complaints and grievances to other inmates resulting in inmates threatening Plaintiff. (Id. at 15.)

On December 15, 2002, Plaintiff appealed to the second level of review, which was denied by Warden Rawers without addressing Plaintiff's complaints about exposure to

ETS/STS. (Id.) The same day, Plaintiff also filed a "CDC-ADA 1824 Form" because he was "continuously suffering from the ill-effects of secondhand smoke."[3] (Id. at 14.) On December 17, 2002, that "appeal" was screened out as a living condition to be grieved on a CDC-602, rather than an ADA issue. (Id.) On December 20, 2002, Plaintiff filed another CDC-602 appeal, but did not receive a response. (Id.)

On January 18, 2003, Depner responded to Plaintiff's appeal and informed Plaintiff that he lacked the ability to grant his request for a transfer, but did not address Plaintiff's complaints about exposure to ETS/STS. (Id. at 12-13.) Plaintiff contends that Depner deliberately failed to respond to his ETS/STS issues and thereby retaliated against him and chilled the exercise of his First Amendment rights. (Id. at 13.) On January 19, 2003, Plaintiff appealed to the next level but received no response. (Id. at 14.) On this basis, he contends that Depner acted in concert with Rawers and Cuttillo to deny him a grievance process in violation of his First and Eighth Amendment rights. (Id.)

On February 3, 2003, Plaintiff continued his CDC-602 appeal to the Director's level, which was denied by Director Alamieda without addressing Plaintiff's complaints about exposure to ETS/STS. (Id. at 12.) On February 5, 2003, Plaintiff's mother called Rawers and informed him that Plaintiff's safety was being threatened by other inmates. (Id. at 15.) Rawers called a housing officer, one of the Doe Defendants, and told the officer to have "an inmate 'go and find out who was threatening [Plaintiff's] life.'" (Id.) The inmate assigned allegedly told "all the other inmates" that Plaintiff was complaining about them smoking in housing units. (Id.) On this basis, Plaintiff contends that "Rawers acted in concert with the housing officer to bring immediate and future harm" to Plaintiff. (Id.) The other inmates began yelling at Plaintiff "'your [sic] dead Wilson!'" (Id. at 16.) Plaintiff then spoke with Captain Cuttillo, who "refused to hear the plaintiffs [sic] expirations [sic]" but instead placed Plaintiff in administrative segregation where he remained until his transfer to CSATF on July

---

[3] Plaintiff repeatedly states that exposure to ETS/STS aggravated his existing serious medical condition and caused severe headaches, dizziness, nausea, vomiting, and breathing problems, among other symptoms.

- 3 -

1, 2003.  (Id.)

In administrative segregation, other inmates "were continuously allowed to smoke tobacco" pursuant to an unwritten policy that "subjected Plaintiff to immediate and future harm." (Id.) On February 18, 2003, Plaintiff was interviewed by Depner and Cuttillo who asked for the names of the inmates that had threatened him. (Id.) Plaintiff informed them that the whole prison yard was threatening him. (Id.) Cuttillo threatened to return Plaintiff to the yard and let other inmates kill him if he did not provide the names of those who had threatened him. (Id.) Plaintiff again stated that he could not provide names. (Id.) Cuttillo yelled at Plaintiff and told him he would be in administrative segregation for a long time and would not be getting time out of his cell and stated, "'now keep writing 602's'" and yelled "'secondhand smoke!'" (Id.) While he remained in administrative segregation, Plaintiff contends that Doe Defendants working in the administrative segregation unit acted in concert with Rawers, Cuttillo, and Depner to deliberately deny Plaintiff yard time, showers, visitation, law library visits, personal property, cleaning supplies, and clean clothes because he exercised his First Amendment right to seek redress of grievances. (Id. at 16-17.)

On July 1, 2003, Plaintiff was transferred from ASP to a CSATF dormitory, where he remained until his parole on July 10, 2005. (Id. at 17.) Upon his arrival, Plaintiff asked Doe housing officers for a transfer to a smoke-free environment due to medical problems he suffered from smoke. (Id.) The officers told him they could not do anything and told him to go away. (Id.) On July 15, 2003, Plaintiff filed "a 602-appeal 'EMERGENCY APPEAL'" stating that he was suffering adverse effects from STS in his housing unit and that housing officers were unwilling to stop inmates from smoking in the unit. (Id. at 18.) Plaintiff did not receive a response, which he contends violated his right to a prison grievance procedure. (Id.) He contends that Woodford, Adams, Kyle and Does 1-10 failed to respond to his appeals about STS. (Id.)

On September 15, 2003, Facility Captain Jack Lais interviewed Plaintiff about several inmate appeals regarding STS, but told Plaintiff there was nothing he could do about the issue. (Id. at 18-19.) Plaintiff never received responses to numerous appeals concerning

- 4 -

STS. (Id. at 19.) Plaintiff asserts that Lais was deliberately indifferent to Plaintiff's serious medical needs or to conditions posing a serious risk of harm. (Id.)

On June 9, 2005, Plaintiff was seen by CSATF's dentist for a swollen lymph gland on the right side of his neck, which a medical technical assistant thought was the result of an abscessed tooth. (Id.) On June 13, 2005, Plaintiff was examined by Dr. Nguyen, a physician, who gave him a seven-day supply of antibiotics, but who denied Plaintiff's request to be examined by an outside specialist. (Id. at 19, 20.) Plaintiff contends that Dr. Nguyen acted with deliberate indifference to his serious medical needs by intentionally failing to diagnose the lymph node or treat it. (Id.) He further contends that Dr. Nguyen also failed to provide him with 30-day supply of insulin, syringes, blood pressure and cholesterol medications, among others, prior to his release on parole.[4] (Id. at 19.) Plaintiff contends that Woodford, Adams, and Nguyen are responsible for the failure to provide 30-day supplies of medications upon Plaintiff's parole to Indiana from CSATF on July 10, 2005. (Id. at 19, 20.)

Because Plaintiff lacked medications for his health conditions between July 10-17, 2005, he became severely ill and went to an emergency room of the Veterans Medical Center in Indianapolis. (Id. at 20-21.) A physician there referred Plaintiff for a CT-scan. (Id. at 21.) On July 28, 2005, Plaintiff had the first of several biopsies. (Id.) On August 25, 2005, he was diagnosed with lung cancer and cancer of the tongue. (Id.) On September 15, 2005, Plaintiff had a further biopsy and on September 19, 2005, was informed that he had squamous cell cancer. (Id.) On September 20, 2005, eight of Plaintiff's molars were extracted at the Veterans Hospital. (Id.)

## III. Failure to State a Claim

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v.

---

[4] According to Plaintiff, Dr. Nguyen was responsible for ensuring that Plaintiff would have medication available for a period of time reasonably necessary to consult a new physician and obtain a new supply when he was paroled. (Id.)

- 5 -

Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). Negligence by a defendant acting under color of state law is not sufficient to state a claim under § 1983. Daniels v. Williams, 474 U.S. 327, 330-31 (1986) (plaintiff must plead more than mere negligence in a § 1983 action); see Alfrey v. United States, 276 F.3d 557, 568 (9th Cir. 2002). Further, a plaintiff must also allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

### A. Does 1-10

Plaintiff sues Does 1-10, without differentiating how any particular fictitiously named Defendant allegedly violated his constitutional rights. Generally, the use of anonymous type appellations to identify defendants is not favored. Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the parties in the action. As a practical matter, it is impossible in most instances for the United States Marshal or his designee to serve a summons and complaint or amended complaint upon an anonymous defendant.

The Ninth Circuit has held that where identity is unknown prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)). Plaintiff may use the discovery processes to obtain the names of the persons whom he believes violated his constitutional rights. If Plaintiff discovers the identities of these fictitious defendants through the discovery process, or otherwise, he may seek leave of the Court to amend to name these individuals.

### B. Dr. Kyle

Plaintiff sues Dr. Kyle. Although Dr. Kyle may properly be sued for constitutional violations, Plaintiff fails to state a claim against him. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation

of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). For an individual to be liable in his official capacity, a plaintiff must allege that the official acted as a result of a policy, practice, or custom. See Cortez v. County of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2001). Further, there is no *respondeat superior* liability under § 1983, so a defendant's position as the supervisor of a someone who allegedly violated a plaintiff's constitutional rights does not make him liable. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor in his individual capacity, "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045.

Plaintiff only makes conclusory assertions that Kyle violated his constitutional rights by failing to address his complaints about exposure to ETS/STS. Plaintiff alleges no facts to support that Kyle personally participated in or promulgated or endorsed a policy or practice of ignoring exposure to ETS/STS in the CSATF. Accordingly, Dr. Kyle will be dismissed.

### C. Grievance Procedure

Plaintiff repeatedly alleges that various Defendants failed to respond to his grievances thereby denying him access to the prison grievance process. There is no free-standing constitutional right to a grievance process because inmates do not have a protected liberty interest in prison grievance procedures. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); see also Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Buckley v. Barlow, 997 F.2d 494, 493 (8th Cir. 1993) (*per curiam*). Therefore, Plaintiff fails to state a claim based upon any Defendant's failure to respond to his grievances.

### D. Retaliation

Plaintiff alleges Defendants retaliated against him by failing to grant his grievances regarding exposure to ETS/STS and failure to transfer him. To state a viable constitutional claim for retaliation, a plaintiff must allege that a defendant acting under color of state law

1 took adverse action against him because he engaged in protected conduct, that the adverse
2 action was not narrowly tailored to advance legitimate correctional goals, and that the
3 adverse action chilled the plaintiff's exercise of his First Amendment rights or caused the
4 prisoner to suffer more than minimal harm. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th
5 Cir. 2005); see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims
6 require that an inmate show (1) that the prison official acted in retaliation for the exercise of
7 a constitutionally-protected right, and (2) that the action "advanced no legitimate penological
8 interest").

Plaintiff asserts that Depner retaliatated against him by failing to respond to his complaints regarding ETS/STS. Plaintiff fails, however, to allege facts to support his claim that Depner's acts or omissions were retaliatory. Indeed, Plaintiff states that Depner informed him that he lacked the ability to transfer Plaintiff to alternative housing. Plaintiff otherwise fails to allege facts to support that his First Amendment rights were chilled; Plaintiff alleges that he continued to file grievances and to appeal the denial of his grievances. Because Plaintiff fails to identify any retaliatory adverse action taken by Depner or to allege facts to support that Plaintiff's First Amendment rights were chilled, Plaintiff fails to state a claim for retaliation against Depner.

Plaintiff also alleges that while he was in administrative segregation, Doe Defendants acted in concert with Rawers, Cuttillo, and Depner to deny him yard time, showers, visitation, law library visits, personal property, cleaning supplies, and clean clothing in retaliation for seeking redress of grievances. These allegations are conclusory and fail to identify when, how, by whom, and the extent to which he was so denied. Plaintiff therefore fails to state a claim on this basis.

Plaintiff also fails to set forth facts to support his claim that he was placed in administrative segregation in retaliation for filing grievances. Rather, Plaintiff alleges that he was transferred to administrative segregation when he reported being verbally threatened and he was unable to identify the inmates threatening him. The facts alleged support that Plaintiff was moved to administrative segregation for his safety rather than in retaliation.

1  Accordingly, these allegations are dismissed.

### E. Threats to Safety

Plaintiff asserts that acts by prison staff constituted unconstitutional threats to his safety. Prison officials are required to take reasonable measures to guarantee the safety of inmates and officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). To state a claim for threats to safety, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to his safety. Farmer, 511 U.S. at 834; Frost, 152 F.3d at 1128; Redman v. County of Los Angeles, 942 F.2d 1435, 1443 (9th Cir. 1991) (*en banc*). To adequately allege deliberate indifference, a plaintiff must set forth facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety. Farmer, 511 U.S. at 837. This means that "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." Farmer, 511 U.S. at 837; Frost, 152 F.3d at 1128; Redman, 942 F.2d at 1442.

Plaintiff in part alleges that unidentified correction officers "told certain inmates" that he was complaining about smoking in the housing units, which he contends was tantamount to condoning an attack on him. (Doc.# 7 at 15.) This allegation is conclusory and vague and Plaintiff fails to connect this allegation to any named Defendant. Accordingly, it is dismissed.

Plaintiff also alleges that after his mother called Warden Rawers regarding threats being made against him by inmates for complaining about exposure to ETS/STS, Rawers called a housing officer and told the officer to have an inmate find out who was threatening Plaintiff. The unidentified inmate instead informed other inmates that Plaintiff was grieving the ETS/STS, resulting in additional verbal threats against Plaintiff. On this basis, Plaintiff contends that Rawers and the housing officer "acted in concert" to cause immediate and future harm to Plaintiff. Plaintiff then spoke with Captain Cuttillo, who moved Plaintiff to

1 administrative segregation based upon his report of verbal threats against him.

2 The facts alleged by Plaintiff are not sufficient to support an inference that Rawers
3 conspired with the housing officer to create a substantial risk of serious harm. Moreover,
4 after Plaintiff complained about the verbal threats, Cuttillo moved him to administrative
5 segregation, where he remained until his transfer to CSATF and Plaintiff does not allege that
6 he ever suffered an assault by other inmates. Plaintiff fails to allege sufficient facts to
7 support that Rawers, the housing officer, or Cuttillo acted with deliberate indifference to
8 threats to his safety.

### F. Medical Care

Plaintiff in part alleges that he received constitutionally deficient medical care. To state a claim for denial of constitutionally adequate medical care, a plaintiff must allege facts to support that he has or had a serious medical need and that a particular defendant acted with deliberate indifference to that need. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003). To allege a serious medical need, a plaintiff must set forth facts to support that the "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991). A plaintiff must also allege facts to support that a defendant was deliberately indifferent to a serious medical need. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference may occur if "prison officials deny, delay or intentionally interfere with medical treatment." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir.1988). Mere negligence, however, "in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." Lopez, 203 F.3d at 1131 (quoting Hutchinson, 838 F.2d at 394). Furthermore, a delay in receiving medical care, without more, is insufficient to state a claim against a jailor for deliberate indifference unless the plaintiff can show that the delay in treatment harmed him. Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). A difference in medical opinion also does not amount to deliberate

indifference. See Toguchi, 391 F.3d at 1058. Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to the prisoner's health. Id. Similarly, differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Plaintiff alleges that Dr. Nguyen only prescribed seven days of antibiotics for his swollen lymph gland and refused to refer Plaintiff to an outside specialist regarding the condition. Although Plaintiff was subsequently diagnosed with cancer, Plaintiff's disagreement with the treatment provided by Dr. Nguyen is not sufficient to state a claim for deliberate indifference to his medical needs.

Plaintiff also asserts that Alamieda, Woodford, Rawers, Cuttillo, Adams, Lais, Kyle, Nguyen, and Depner "approved, allowed, acted in concert or tacitly authorized their subordinate employees to purposefully deny, delay, ignore, or intentionally interfere with plaintiff's serious medical needs that recklessly caused him to suffer future harm, lung cancer that is continously matacitly [sic] moving." (Doc.# 7 at 9, 13.) Plaintiff wholly fails to set forth facts to support that any of the Defendants in any way caused a delay or denial of medical care. He makes only conclusory assertions, which are not sufficient to state a claim.

### G. State Law Claims

Plaintiff alleges that he filed two government claims for state tort violations for pain and suffering, negligence, and medical malpractice. (Doc.# 7 at 10.) He also alleges "the torts of negligence, medical malpractice and I.I.E.D. against the State of California, County of Corcoran, Fresno, and all defendant employees named in this action including Does 1-10 in violation of his constitutional rights." (Id. at 7.) The State of California and Corcoran and Fresno counties are not named as Defendants. Further, Plaintiff sets forth no facts in support of any state law claims, but only sets forth facts in support of his federal claims. (Id.) Accordingly, there are no state law claims before the Court over which to exercise

1  supplemental jurisdiction.

## IV.  Claims for Which an Answer Will be Required

Plaintiff alleges that Woodford, Adams, and Dr. Nguyen failed to provide him with an adequate supply of medication upon parole for a period reasonably necessary to enable him to consult with a doctor and obtain a new supply. See Wakefield, 177 F.3d at 1164 (an outgoing prisoner who is receiving and continues to require medication must be provided with a supply to ensure that he has that medication available during the period of time reasonably necessary to permit him to consult a doctor and obtain a new supply); see also Lugo v. Senkowski, 114 F. Supp.2d 111, 115 (N.D. N.Y. 2000). Plaintiff sufficiently states a claim against them on this basis. Response is required.

Plaintiff also alleges that he was daily exposed to ETS/STS throughout his confinement at ATS, including administrative segregation, and CSATF, resulting in contemporaneous and future illnesses that compromised his health and life. Plaintiff alleges that, through the filing of numerous grievances, complaints, and appeals up to the directors' level regarding ETS/STS, Defendants Alamieda, Woodford, Adams, Cuttillo, Depner, and Lais knew that inmates were smoking in housing units, but acted with deliberate indifference to the risk of substantial harm resulting therefrom. Plaintiff sufficiently states a claim against these Defendants on that basis and they are required to respond to this claim.

## V.  Warnings

### A.  Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83-182(f) and 83-183(b) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### B.  Copies

Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5-133(d)(2). Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**C.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's claims, except to the extent stated in paragraph 2 below, and Defendants Kyle and Does 1-10 are **dismissed** without prejudice. (Doc.# 7.)

(2)     Defendants Alamieda, Woodford, Rawers, Adams, Cuttillo, Depner, Lais, and Nguyen must answer Plaintiff's claims for deliberate indifference to his serious medical needs based on the failure to provide medication upon parole and regarding exposure to environmental and secondhand smoke while an inmate at Avenal State Prison and the Corcoran Substance Abuse Treatment Facility.

(3)     The Clerk of Court is directed to send Plaintiff a service packet including the First Amended Complaint (Doc.# 7), this Order, a Notice of Submission of Documents form, an instruction sheet, and copies of summons and USM-285 forms for Defendants Alamieda, Woodford, Rawers, Adams, Cuttillo, Depner, Lais, and Nguyen.

(4)     Within **30 days** of the date of filing of this Order, Plaintiff must complete and return to the Clerk of Court the Notice of Submission of Documents. Plaintiff must submit with the Notice of Submission of Documents: a copy of the First Amended Complaint for each Defendant, a copy of this Order for each Defendant, a completed summons for each Defendant, and a completed USM-285 for each Defendant.

(5)     Plaintiff must not attempt service on Defendants and must not request waiver of service. Once the Clerk of Court has received the Notice of Submission of Documents and the required documents, the Court will direct the United States Marshal to seek waiver of service from each Defendant or serve each Defendant.

(6)     **If Plaintiff fails to return the Notice of Submission of Documents and the required documents within 30 days of the date of filing of this Order, the Clerk of Court**

**must, without further notice, enter a judgment of dismissal of this action without prejudice.** <u>See</u> **Fed. R. Civ. P. 41(b).**

(7) The Clerk of Court must note on the docket for this case the addition of Depner and Nguyen as Defendants.

DATED this 14th day of April, 2009.

_____
John M. Roll
Chief United States District Judge